Compellent U.S. Alliance Grp, who I refer to as USAG, I would like to reserve five minutes for rebuttal. Your Honors, I have three arguments that I would like to make. One, the District Court's ruling that the agreement only contained an ambiguous term based on a future event is flawed. Two, the District Court misapplied California law regarding interpreting the party's intent and when and how to analyze extrinsic evidence. And under California law, reading the agreement as a whole, there were, at a minimum, disputed facts as to the contract's meaning and the party's intent. Your Honors, we have a settlement agreement here between USAG and a third party, LibertyX. The agreement states in standard boilerplate language that USAG release all present and But that agreement also states in a separately negotiated terms that USAG reserve the right to make claims against Cardtronics in the future. You're talking about the disparagement provision there? Yes. Is that a fair reading of it, reserve the right to make claims? I agree with you, your argument, that a premise of the disparagement clause is that USAG would like to sue Cardtronics. I think that's clear. But what is the purpose of that disparagement clause? Why is that in the settlement agreement? Well, the non-disparagement clause, I think, was in there to talk about non-disparagement, but we have an agreement. Tell me, practically speaking, why is that in the settlement agreement? I didn't do this kind of law. Why do you have a non-disparagement clause? Well, it's probably so that parties later aren't saying, you know, going out and creating a webpage to go, you know, blast these people all over the place. But the non-disparagement clause is just a block of text. In that same agreement, it says that the headings have no meaning in this agreement. So that text being in the non-disparagement clause has no effect. It's the same as if it were anywhere else in the agreement. Now the district court ruled that if Cardtronics and Liberty X had been affiliates at the time the settlement agreement was entered, USAG would have identified a contractual ambiguity. But that response is incorrect because it misuses important terms. When NCR completed its acquisition of Cardtronics, it became a present affiliate. It did not then become a future affiliate. Cardtronics was a future affiliate before the acquisition. And if you're like me, you're thinking about the movie Back to the Future a little bit here so we'll try to not get us off track. Both Cardtronics and the district court failed to appreciate that Cardtronics was a future affiliate when the settlement agreement was entered. The member... Am I understanding you right? They could have been a future affiliate in the settlement agreement. That's correct. They weren't at the time, obviously. They weren't at the time, obviously, but the class of future affiliates couldn't be ascertained in advance by definition. Right. Yeah, it wasn't, it wasn't, it wasn't constrained, right? It was very broad. It was very broad. That's correct. Sorry. No, no, no. That sort of, that was actually the direction I was going. Why wasn't Judge Vance right then when she said, well, consistent with, even if we look at extrinsic evidence, consistent with the non-disparagement clause, it's clear the intention then was to pursue Cardtronics. And yet the parties simultaneously negotiated that if unforeseen circumstances come about, making them an affiliate, which is exactly what the acquisition did, at that point, they get the benefit of the release provision. In other words, all the clauses and even the extrinsic evidence seems to say this was a changed circumstance and the parties negotiated that eyes wide open. Because under, I think where the court got confused here is that California law applies a different standard. It's, this is going to the party's intent, USAG. But the intended, I guess what I'm saying is I think the district court knew that, yes, the intent at the time of the settlement agreement was that Cardtronics was likely to be sued. But there was a simultaneous, equally valid, not intentioned intent that if future circumstances change and they align, well, at that point, they'll benefit. Why can't those two work together? Because it goes against USAG's intent. USAG did not intend that if a future date Cardtronics were to become an affiliate, that it would release it. That's exactly what they said, though. Regardless of unforeseen circumstances, all future affiliates get the benefit. In the boilerplate language. But under California law, you give more weight to specific negotiated terms that are in the agreement. This was boilerplate language that the record reflects nobody touched. What's, what, they cite the Garrett decision. Is it Garrett? Yeah, Garrett versus Baker. That it isn't necessary for the third party beneficiary to be named. The focus is on the future class. Do you accept that? I don't accept that, Your Honor. That's a, that's a, um, out of, uh, it's a persuasive authority. It's not a binding authority like the California law. I think that case was out of New York, if I'm correct. Maybe double check when you sit down. I would have said it's 1936 California law.  I apologize, Your Honor. Well, you, you can double check. I could easily be wrong. Okay. Thank you, Your Honor. Um, going back to, Your Honor, the, the class of future affiliates existed. So if you take future out of the agreement, there would still be an ambiguity. So going to your questions of, can these things to exist? That doesn't discount that there is an ambiguity here. And the court seems to have jumped to a latent ambiguity analysis. But reading the agreement saying the future affiliates existed at the time, that's a patent ambiguity. And the court looked at the evidence and it seemed to give more weight to the declaration of Chris Yim, who's not a party to this, certainly an interested party to this, than to Mr. Sheikha, who stated multiple times that he did not intend to include cardtronics, regardless of the events. Sorry, didn't intend to include cardtronics in what? In the release. Okay. In other words, in the class of future affiliates? That's correct. Thanks. And that's. Well, no, if we are, if ambiguity and you are jumping to extrinsic evidence, I thought there was, in the world of extrinsic evidence, I thought there was a draft that suggested that the parties would be very clear and carve them out from future lawsuits. And yet that wasn't inserted. Instead, it's just the language that ended up in the non-disparagement clause. Am I wrong on that? I believe you are, Your Honor. There was no negotiation of that. So you're saying there was never a proposed draft that was more conclusive that they could always be sued? No, Your Honor. Okay. I don't, I'm not sure why I think that, but. No, that, that leading up to the agreement and we're in a unique position where the attorney. What does the language mean then? Excuse me? What does the language mean? You, the language taken as a whole in the entire agreement. Taken as a whole, I'm backing away from the language. It says it very plainly and you may have didn't think about it, but there it is. Tell me where in the language we can reach the conclusion you want that this doesn't control. It's under the non-disparagement clause where it says that USAG. How does it, how does that have anything to do with disparagement? It simply has to do with a potential liability. Well, Your Honor, it's, it's not a conclusive agreement. This is going to, is there an ambiguity that needs to go to a fact finder? The agreement, I agree, is not the most perfect. That's what you want in every contract you don't want to abide by, is look for ambiguity and say that's not the deal. What is the ambiguity? I missed the last part. What is the ambiguity? I don't see how you can read it any other way reasonably than Judge Vance did, frankly. The ambiguity is because within the four corners of the document, it states that USAG may make claims against Cartronics. And under California law, when there's even a hint of an ambiguity, you go to the extrinsic evidence. And the extrinsic evidence here is that USAG planned to sue them. And also under California law, courts will look to what happened between executing the agreement and a dispute over the termination. And here Cartronics sued, excuse me, USAG sued Cartronics and maintained Cartronics and now is filing an appeal against Cartronics. Next, we're going back to, if Cartronics makes the argument that Cartronics was not an affiliate at all when the settlement agreement was entered and therefore under California law, it cannot be a third-party beneficiary. What was the purpose of the affiliate clause? What were the parties trying to accomplish with it? By dealing with affiliates. I believe Cartronics, excuse me, Liberty X's intent, you know, they were silent as to that. Their attorney and the clients themselves had discussed that this does not include Cartronics. But the purpose of the affiliate clause is likely, you know, Cartronics, other companies that it was affiliated with. At the time, it had none. But now they do. Later they do. So they've become one. Now they do. And your honor, when you have an agreement, again, under California law, is when it's so broad that it releases everybody in the world, the burden is on that party to specifically state that it did intend to include Cartronics. And Cartronics here, again, this is a disputed fact, excuse me, Liberty X here, this is a disputed fact. The disputed fact states that it didn't think of Cartronics one way or the other. It wanted a broad release. It then says it wanted to protect everyone. But at the time, the extrinsic evidence shows that even Cartronics attorney is stating this has nothing to do with Liberty X. They aren't included. The clients were in discussion with both the parent corporation and Cartronics and Liberty X discussing that this suit was going forward. So if there's, again, they can't be a intended third party beneficiary if they were not any type of affiliate at the time the agreement was formed. The parties must specifically intend to benefit a non-signatory for it to be treated as a third party. That's the parties, not a party. And here we have disputed evidence. I believe the evidence weighs in our favor, but that was improper to discuss at a motion for summary judgment that USAG did not intend to include this. Now, the court seems to have said, you know, I like this evidence better. But that's, again, not proper on summary judgment. So when I mentioned this earlier, but I want to nail it home is that under California law, when you're interpreting a contract, the court receives all credible evidence concerning the intention to determine ambiguity first. Second, it goes to the contract. So we've shown that there's at least some ambiguity here in the contract. The contract states that USAG might sue Cartronics in the future. Now, what the court has done is it stated, no, this section up top is dispositive. You released any affiliates, you assumed that risk. But the extrinsic evidence here states that this was never the intent, regardless of the outcome. Where the interpretation of a contractual language turns on a question of credibility, of conflicting extrinsic evidence, the interpretation of the language is not a judicial function. And here, the court took that function. I want to touch on one more point is separately negotiated or added terms are given greater weight than standardized terms. Again, the agreements, and part of the record is the red lines going back and forth. This section was never touched, but the section, including that we are suing Cartronics in the future, was separately negotiated, and that should be given more weight. This court has held that certain language in a contract shall be read for textual clues when those words are found elsewhere in the contract. Here, again, the non-disparagement states that USAG may pursue claims in the future, and it carves Cartronics out in the release. And courts should read contracts to give effect to every word and phrase in the agreement. And the court states that if Cartronics was accepted, it would create a nullity on the release. But that's not true. This could still give Liberty X a broad defense against any claims related to Cartronics. And the position isn't that all non-signatories can't invoke this. It's because Cartronics can't, because the parties, at least one of them, clearly intended not to release Cartronics. Thank you, counsel. You still have rebuttal time. Good afternoon. May it please the court. Chris Dove for Cartronics, the FLE. I think this court should begin with what California law says and what it doesn't say. And I think, specifically, my colleague said that if there's a hint of ambiguity, you're supposed to go running to extrinsic evidence. That's not what California law says at all. The California Code has two provisions. Both sides agree that they're there. They're in the books. 1639 says, when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible. 1652 says, repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract. This is not crazy. This is not new. This is Anglo-American contract law. And that's all we're asking the court to apply here. But if you just look at the writing alone, Section 4 is a problem, because Section 4 makes clear everyone intended at the time the settlement agreement was negotiated, everyone intended and understood that Cartronics was going to be sued. How, at the same time, can you say this agreement, actually, they intended to benefit Cartronics and release them fully? That's the sort of core dilemma just from the writing alone. I agree that that is looking solely at the writing alone. And I think that Judge Vance absolutely got it right. There's not a repugnancy between the two. Or if there is, you should read them together to harmonize, rather than to go looking for an interpretation that makes them conflict. At the time the agreement was signed, they absolutely could sue Cartronics, because Cartronics was not an affiliate of Liberty X, and would not be for several more months. The announcement wouldn't even be made for another two months. They turned around and sued, as was their right. But what they did was they bought a gamble. They knew that the words future affiliates mean future affiliates. They weren't releasing Cartronics in the ongoing litigation. Well, it wasn't ongoing. It was five days later. They weren't releasing them immediately. And if they weren't acquired by the same entity, that litigation would have gone on and continued, as Judge Vance reckoned. Was the acquisition, is it in the record, whether the acquisition is occurring at the time of the negotiated settlement? The dates of each of the events are in the record. Basically, what happened was it was known to all the parties at the time they were negotiating this, that NCR intended to acquire Cartronics, and did after the agreement was signed. The testimony is that we suspected they may be interested in acquiring LibertyX, but Mr. Chayka says, I didn't know. And we agree. Nobody could have known. It hadn't been announced. They hadn't even reached a letter of intent yet. That wouldn't come for another two months. And then that deal had to go through all of its due diligence. It wouldn't be completed for another six months after that. So by the time we get to February 2022, when LibertyX is acquired, that's when, all of a sudden now, Cartronics is a future affiliate of LibertyX and is released by the agreement. That is exactly what the contract had always allowed. The future affiliate does all the work, or is it relevant that it was foreseen or unforeseen? I do not agree that California law requires foreseen or unforeseen as to a specific entity. And if you look at the cases we've cited, the Lakers, Scribina, Friends of Riverside Airport, what they all say is, the purpose of a general release is to relieve the parties of the obligation of having to brainstorm every conceivable thing that they could write in their contract. General words mean what they say, and we will enforce them exactly as written. So when they agreed each future affiliate, that is exactly who they released, each future affiliate. And they took the risk that if NCR would come along and acquire LibertyX, they would become future affiliates and would have to give that up. In the extrinsic material, is there any suggestion that they wanted to be even more clear there was a carve-out for Cartronics, or was I wrong about that? I'm not aware of that. What we have been disagreeing on in the briefs is, what did Mr. Chayka say about his intent? At one point, he said, I knew that it might happen. I suspected it. But then he said, no, but I didn't know. And it was never my intention to release. The problem is, even in California, which does have a somewhat different attitude toward ambiguity than does Texas, Louisiana, and Mississippi, insofar as you can consider extrinsic evidence to determine whether the contract is ambiguous in the first place, which is not the usual rule. Even still, what we're doing is interpreting the words of the contract. The Pacific Gas and Electric case from the California Supreme Court makes it clear you can't allege ambiguity in order to add to, detract from, or vary the terms of a written contract. We're still interpreting the words, each future affiliate. So when we asked Mr. Chayka, well, what do you mean? What is the allegation that you're making about the ambiguity in the case? He said, and this is at 1573 and 74 of the record, it's the absence of a carve-out. That's the ambiguity. There should be a carve-out that says we can't suit that cardtronics is not released, and it's not there. And that's what the ambiguity is. That is not valid under California law or any Anglo-American jurisdiction. Was such a carve-out ever proposed during negotiations over the settlement agreement? A carve-out for cardtronics? I do not know that there was. And I don't know, to my knowledge, the record doesn't reveal that it was proposed or not. What I would argue, though, Judge Duncan, is that to the extent that we start talking about what the parties might have haggled about, that is far less relevant than what is on the page. True. But if the parties haggled about it and decided not to include a carve-out, I would think that would help your case. I agree. But I am very aware of the goose gander problem. If there's adverse evidence out there somewhere, I don't want to get cooked by that either. I like the words of my contract. Another thing that struck me about my colleague's presentation this afternoon is he kept talking about how this was boilerplate language, this future affiliate release. In his reply brief, he criticizes us for not using boilerplate language, which itself was wrong because he says we didn't use any or all. And we did use the words any and all. Even more to the point, if you take Section 2.1 of the contract as being near boilerplate language, which I don't think it is. I have never in my entire career as a commercial lawyer seen so many synonyms thrown into a paragraph. I was about to say it's the kind of clause that makes people hate lawyers. Guilty as charged. The parties then negotiated two more provisions on top of this one, 1.4 and 2.5. 2.5 reiterates we are releasing, quote, to the fullest extent permitted by law and are deemed full and complete general releases, unquote. In Section 1.4, they specifically waived any right to reform or modify the settlement agreement for any reason whatsoever. Because the parties, quote, fully understand, unquote, that the releases are, quote, completely and finally released, unquote. This is not boilerplate language. This is belt suspenders helicopter. I don't know. They said it so many times. Is that your primary distinction for epic communications? Yes, both positively and negatively. And what I mean by that is this is a case where the intent to release was restated several times in the broadest possible terms. And epic communications went the other direction. It had several specific express provisions limiting its scope. And what the epic communications court pointed out was there's something of a smoking gun. It specifically said no other party may enforce this contract. Well, if that had been the case, now I understand why there would be a question about third party beneficiary status. In addition, it specifically said we are only releasing the claims that were resolved by this arbitration and none other. Well, that only applied to the one party and not to the others because of the posture of the case. Under those circumstances, I absolutely think epic was correctly decided. If you expressly say you don't intend to benefit anyone else and you don't have repeated statements of the intent to release as broadly as possible, that's correct. But this case is more like Rodriguez versus Odo in which the court said when it comes to determine whether somebody is a third party beneficiary, the contract itself is proof of that. And when you have a release that is intended to release somebody, the only logical meaning of that is that you intend to benefit that party by releasing them. If you limited it only to signatories, the release would be nonsensical. Now, epic communications essentially proves the point by, it proves the exception to the rule, if you will, by saying, well, if a party actually writes out and I really don't intend for any other party to ever possibly be able to enforce this, you can say, well, maybe a general release term doesn't mean what it says. I'm shocked. It's a surprising thing that you would do. I would think in the negotiation process, you would rethink using broad words if you're going to limit that. But that's not what they did. They said it was ambiguous. Ambiguities arise. And so they went on and resolved that under the facts of epic communications. This case doesn't present any of that. What we are encouraging the court to do is to look at very ordinary applications of law. Oyster Optics case is an example. They pointed out that it's a New York law case decided by a district court. And that's fine. It's not binding on this court. It's just good sense. It provides reasonable guidance. The cases that we've cited from California that say we take broad release terms and we enforce them exactly as written, that makes sense. To what extent are you relying? I'm reading here section 2.4 of the agreement that has to do with the possible discovery of facts or law different from facts or law that are currently believed to be true. Are you relying on that clause at all in support of your argument? We have not cited that. And to be perfectly candid, we haven't briefed it. And so I'm not going to stand here and tell you that we depend on it. No, I just read it and I thought it was interesting. I appreciate that. No, we have briefed this case as being under 2.1, 2.5, 1.4. Fair enough. To the extent that there's something else. If my colleague believed that it were relevant, he would have briefed that also. The reason I asked is because it strikes me that this case may be about a conflict between sort of expectations at the time the settlement agreement was entered into and the sort of how the facts cashed out in the future. We didn't expect for Cardtronics to become a future affiliate, and yet they did. And that's sort of that conflict. And how do we resolve that under the terms of the contract? I don't know if you see it that way. I can appreciate that. It's certainly that is what cries out about this case. The question, how did we get here? And surely you can see why somebody might be frustrated with how it arose. On the one side, and I don't believe that there's conflict in this testimony, but I do want to point it out because I believe it provides the full picture. Liberty X's CEO, Chris Yeom, testified, while I wasn't thinking specifically about Cardtronics, what I was thinking was that I wanted a full release of every past, present, and future affiliate because I wanted to get acquired, and I didn't want anything to possibly prevent somebody from acquiring me. And fair enough. I wasn't literally thinking Cardtronics. I meant everybody. On the other hand, you have Mr. Chayka who says, I didn't want to release Cardtronics. And you can tell that, he says in his deposition, because I sued him the next day. But I think the problem with that is the question is, what was Mr. Chayka thinking? And it doesn't match with what's in the contract. He was thinking, I'm going to go sue them the next day. He had that right. As Judge Vance pointed out, this is absolutely right. He turned around and sued because he could. Because what he had released was the possibility that Cardtronics might become an affiliate. He might. I don't really know whether this is the case or not, but he might have been thinking, well, Cardtronics is not going to become an affiliate. I don't even know if anybody was thinking about that because I don't know the business realities of this situation. There is some testimony in the record where Mr. Chayka says there was a rumor of that. And then Mr. Chayka says, but I didn't know it. I wasn't aware of it. And we agree because as I mentioned earlier, nobody could know anything. It was a discussion that was going on. They hadn't signed a letter of intent yet and wouldn't for another couple of months. And then that they had to go through due diligence and it would take another six months to be resolved. There wasn't anything that could have been known, but it may very well have been that he was satisfied with the thought. All right, now I'm telling you, I'm going to go file suit tomorrow. Great, you go file suit tomorrow. And I'm telling you, I'm not, you're not settling on behalf of Cardtronics. That's right. We're not paying a dime on behalf of Cardtronics, but what we are demanding and will not settle without is a release of all future affiliates. Fine, I'll take that. So it's a gamble. It is a gamble. I don't think it was an unreasonable gamble commercially. Both sides got what they wanted. USAG got a million dollars out of Liberty X. And Liberty X wouldn't have signed the deal if there were any contingency or any concern about whether they had to wait to resolve the case based on their litigation against Cardtronics. Everybody got what they had. They moved forward. And I think that's the right solution here. I think in California, as in everywhere else, when sophisticated businesses sign a contract that says we release all future affiliates and on top of that, go to great pains to say, and I meant every word I said, and I will never claim that I used the wrong word. And I meant to release the fullest extent possible by law. And this is a full and complete release. How can a court not enforce that? In what world then will we have to go, well, we have to try every case to find out what you mean. When you have been that clear, I don't think that's the right outcome for this court. If the panel has any other questions, I'm happy to answer them. Otherwise, I would yield the rest of my time. Thank you, counsel. Our rebuttal. Thank you, your honors. California law states that you must avoid an absurd result in the contract. Cardtronics argument in their brief at the bottom of page 39, on top of 40 of their brief, they try to harmonize the non-disparagement. They're saying that USAG is releasing Cardtronics in the present, but not at the future. You can't release someone for only claims in the present. The words are releasing them in the future. And this argument is about intent, not to whom the agreement applies. And the intent that Cardtronics was not a releasee. And the argument seems to be here, whether this happened or did not happen. That's not the argument here. USAG concedes that it's probably not for this court to decide. The argument here is that, because there was an ambiguity in the agreement, there is a dispute as to the party's intent. And that requires an evidentiary hearing that the court took out of our hands with a motion for summary judgment. Regarding California law, California law does state that, when you're determining that a contract is ambiguous, I think we can, I think many people will agree, at least that there is some ambiguity in this contract. And California has a very low standard of what it is an ambiguity. I think that USAG stating that it plans to sue USAG in the future within the same agreement, creates an ambiguity. So in that case, the court must first go to the extrinsic evidence offered to prove the party's mutual intent. And here it's undisputed that USAG has taken the position that its intent was not to release Cardtronics, no matter what happened. The other side says that it had that intent to release anything broad. That's a disputed fact. And it's a disputed fact, including someone who's not even a party to this agreement. So the court must admit and consider all of the evidence, which the court failed to do. It seemed to pick and choose which evidence, and it gave more weight to the evidence of the third party, Liberty X. The statements that Mr. Sheikha even had a suspicion that Liberty X was going to be purchased, the trial court took that deposition transcript to be accurate, but this was a very contentious deposition. This question was asked, I believe, 15 times. And the question asked where he finally got something close to the result he wanted is very confusing. It's stated that you have a suspicion at the time that NCR had designs on acquiring Liberty X. The question's unclear. It messes up the tenses. And if you read around that section, they're talking about Mr. Sheikha's knowledge as of the present date. English is not Mr. Sheikha's first language. And he stated multiple times that the only reason he knew is because it happened. Regarding Mr. Sheikha's opinion of the contract being ambiguous, he's not the person to be making legal implications about ambiguity in the contract. That is one for the court or the fact finder. And here the court said that there was an ambiguity  If Cardtronics had not made the decision had been a present affiliate. The court admitted that. But again, Cardtronics was a future affiliate at the time the agreement was entered. Both sides have disregarded that and stated they weren't any type of affiliate at the time the agreement was entered because otherwise by the court's own ruling, there would be an ambiguity in the agreement. On the argument of the intent to release covered in every section, I think if we took that argument at face value, you would need to be including Cardtronics all over this agreement. But again, we're not saying that absolutely is Cardtronics released. It's a disputed, it creates a disputed fact that shows that there is an ambiguity and it shows that USAG did not have the intent, arguably. And we would say that putting it in there one time is enough. Thus, this court must reverse because the settlement agreement is ambiguous because Cardtronics was a present future affiliate when the agreement was formed. And by the court's own words, there would be an ambiguity that would require an evidentiary hearing. If Cardtronics was not an affiliate from the start, the parties could not have intended to benefit it. Thank you, counsel. Thank you. Case is submitted.